[Cite as *Watts v. Community Health Ctrs. of Greater Dayton*, 2015-Ohio-5314.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| ELIZABETH C. WATTS, | : | CASE NO. CA2015-07-068 |
| Plaintiff-Appellant, | : | |
| | : | O P I N I O N<br>12/21/2015 |
| - vs - | : | |
| | : | |
| COMMUNITY HEALTH CENTERS<br>OF GREATER DAYTON, et al. | : | |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 14CV86096

Elizabeth C. Watts, 5014 Weidner Road, Springboro, Ohio 45066, plaintiff-appellant, pro se

Pickrel, Schaeffer & Ebeling Co., L.P.A., Matthew D. Stokely, 2700 Kettering Tower, Dayton, Ohio 45423, for defendant-appellee, Community Health Centers of Greater Dayton

Michael DeWine, Ohio Attorney General, Robin A. Jarvis, Assistant Attorney General, 1600 Carew Tower, 441 Vine Street, Cincinnati, Ohio 45202, for defendants-appellees, Ohio Department of Job & Family Services and State of Ohio Unemployment Compensation Review Commission

**S. POWELL, J.**

{¶ 1} Plaintiff-appellant, Elizabeth C. Watts, appeals from the decision of the Warren County Common Pleas Court affirming the decision of the Unemployment Compensation

Review Commission disallowing her claim for unemployment benefits on the basis that she quit her job without just cause.[1]  For the reasons that follow, we affirm the judgment of the common pleas court.

{¶ 2} Appellant worked for Community Health Centers of Greater Dayton (CHCGD) as its chief financial officer (CFO) from July 7, 2008 to September 20, 2013.  In June 2013, appellant was informed by CHCGD that, because of the company's continuing concerns with her job performance, including her failure to meet certain work-related deadlines, it had decided to hire a new CFO.  CHCGD determined that there would be a 60-day transition period from July 22, 2013 to September 20, 2013.  CHCGD agreed to allow appellant to keep her current salary during the transition period, and appellant, in return, agreed to work with the new CFO to train her in all aspects of the position of CFO.  Appellant also agreed to accept a demotion to the position of senior accountant, with a 25 percent pay decrease, starting September 21, 2013.

{¶ 3} On December 11, 2013, CHCGD's new CFO and the company's human resources (HR) manager met with appellant to clarify appellant's job responsibilities and to discuss several work-related deadlines appellant had missed.  The matters discussed were summarized in a document entitled "12/11/13 Discussion Items—Beth Watts Performance Issues," and included appellant's failure to meet the deadlines for preparing CHCGD's monthly financial statements.  The document indicated that appellant was expected to prepare CHCGD's November financial statements by December 19, 2013 and the company's December financial statements by January 22, 2014.

{¶ 4} On January 7, 2014, appellant received a "Step 1 Corrective Action Form" for her failure to meet some of the deadlines discussed at her meeting with the new CEO and

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.

the HR manager the previous month, including the December 19, 2013 deadline for preparing the November financial statements. Under CHCGD's "progressive discipline" policy, a Step 1 Corrective Action Form is issued to an employee whose performance or conduct is such that it rises to a point where it needs to be documented. If the employee's performance or conduct does not improve, then the employee is issued a Step 2 Corrective Action Form to allow the employee an additional opportunity to correct his or her performance or conduct, and if the employee's performance or conduct still does not improve, then CHCGD looks at discharging the employee. The Step 1 Form issued to appellant stated that "[y]our performance is expected to improve *immediately* and must be sustained[,]" and the form listed several "deadlines" for appellant to meet, including having the December financial statements prepared by January 22, 2014. At the bottom of the Step 1 Form, it was stated that "[f]ailure to meet expectations regarding deadlines, or any other violations of policy or procedure may result in additional corrective action, up to and including, termination."

{¶ 5} Later that same day, the new CFO came to appellant's office and told her that she did not think appellant was going to work out. Appellant later stated in sworn testimony that she did not feel that the new CFO was saying that she was going to be discharged immediately, but felt that the new CFO's statement was an indication of appellant's imminent discharge. Consequently, appellant tendered her written resignation on January 9, 2014. After working out her two-week notice, appellant's last day of employment with CHCGD was January 22, 2014.

{¶ 6} Appellant applied to the Ohio Department of Job and Family Services (ODJFS) for unemployment benefits. ODJFS initially granted appellant unemployment benefits, finding that CHCGD's disciplinary action against appellant "was not justified" and that she "quit with just cause[.]" CHCGD appealed to the Director of the ODJFS, who issued a "Redetermination" affirming the agency's initial determination. CHCGD then appealed the

Director's Redetermination, and the ODJFS transferred jurisdiction to the Unemployment Compensation Review Commission (Review Commission).

{¶ 7} After holding a hearing on the matter by telephone, the Review Commission's hearing officer issued a decision reversing the Director's Redetermination and disallowing appellant's claim for unemployment benefits. The hearing officer found that appellant was "on the first step of the progressive discipline process[,]" that she "did not face inevitable discharge and could have remained employed[,]" and that "her quit after one reprimand was not reasonable." Consequently, the hearing officer concluded that appellant quit her job at CHCGD "without just cause," and therefore was not entitled to unemployment benefits. The Review Commission disallowed appellant's request for further review.

{¶ 8} Appellant appealed to the common pleas court. The matter was referred to a magistrate who recommended that the Review Commission's decision be affirmed. Appellant filed objections to the magistrate's decision. The common pleas court overruled appellant's objections and affirmed the decisions of both the Review Commission and the magistrate.

{¶ 9} Appellant now appeals and assigns the following as error:

{¶ 10} THE DECISION REACHED BY THE HEARING OFFICER, DAVID T. SPENCER, ON JUNE 9, 2014, AND SUBSEQUENTLY UPHELD BY THE COURT OF COMMON PLEAS ON JULY 17, 2015, DISALLOWING UNEMPLOYMENT BENEFITS, WAS UNLAWFUL, UNREASONABLE AND UNSUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE AS SET FORTH UNDER OHIO REVISED CODE SECTION 4141.282(H). THIS RESULTED FROM DISREGARDING FACTS OF SIGNFICANCE AND APPLICABLE CASE PRECEDENCE [sic], WHICH IF CONSIDERED, SHOULD HAVE SUPPORTED A DIFFERENT OUTCOME.

{¶ 11} Appellant argues the common pleas court erred in affirming the Review

Commission's decision disallowing her claim for unemployment benefits on the basis that she quit her job without just cause, because the decision was unlawful, unreasonable, and unsupported by the manifest weight of the evidence. We disagree with this argument.

{¶ 12} The common pleas court and this court utilize the same, limited standard of review in unemployment compensation cases, to wit: "reviewing courts may reverse just cause determinations only 'if they are unlawful, unreasonable, or against the manifest weight of the evidence.'" *Odom Indus., Inc. v. Shoupe*, 12th Dist. Clermont No. CA2013-09-069, 2014-Ohio-2120, ¶ 11, quoting *Chen v. Ohio Dept. of Job & Family Servs.*, 12th Dist. Clermont No. CA2011-04-026, 2012-Ohio-994, ¶ 17, quoting *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.*, 73 Ohio St.3d 694, 696 (1995). In considering whether a judgment is against the manifest weight of the evidence in civil or criminal cases, a reviewing court must "weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the finder of fact 'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Odom Indus., Inc.*, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001).

{¶ 13} Given the limited standard of review employed in unemployment compensation cases, "reviewing courts are not permitted to make factual findings or determine the credibility of the witnesses[,]" and "[f]actual questions remain * * * solely within the province of the Review Commission." *Odom Indus., Inc.* at ¶ 12, citing *Chen* at ¶ 17. However, reviewing courts have the duty to determine whether the Review Commission's decision is supported by the evidence in the record, and this duty is shared by all reviewing courts, from the first level of review in the common pleas court through the final appeal. R.C. 4141.282(H); *Hertelendy v. Great Lakes Architectural Serv. Sys., Inc.*, 8th Dist. Cuyahoga

No. 97782, 2012-Ohio-4157, ¶ 16. Indeed, "[t]he focus of an appellate court's review on an unemployment compensation appeal is upon the Review Commission's decision [rather than the common pleas court's decision] and whether such decision is supported by evidence in the record." *Odom*, citing *Chen*; *Hertelendy*.

{¶ 14} Appellant's principal argument is that the Review Commission's finding that she quit work without just cause is against the manifest weight of the evidence. She contends that the common pleas court should have deemed her resignation to have been a "constructive discharge," because she did not quit voluntarily but was forced to resign due to the fact that her employer made her life so "unpleasant" that any reasonable person in her situation "would have felt compelled to do the same." We find this argument unpersuasive.

{¶ 15} No individual may be paid unemployment compensation benefits if the individual quit work without just cause. R.C. 4141.29(D)(2)(a). The word "quit," for purposes of unemployment compensation, connotes a voluntary act of the employee not controlled by the employer. *Caudill v. Ashland Oil Co.*, 9 Ohio Misc.2d 16, 17 (Clermont C.P.1983). "Just cause" is "that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Shephard v. Ohio Dept. of Job & Family Servs.*, 166 Ohio App.3d 747, 2006-Ohio-2313 (8th Dist.), ¶ 19. The determination of whether an unemployment compensation claimant had just cause to quit his or her job "depends on the 'unique factual considerations' of a particular case and is, therefore, primarily an issue for the trier of fact." *Id.*, quoting *Irvine v. Unemp. Comp. Bd. of Review*, 19 Ohio St.3d 15, 18 (1985).

{¶ 16} Generally, an employee who experiences problems in his or her working conditions must make reasonable efforts to resolve the problems before quitting. *Shephard* at ¶ 26. This requires an employee to notify his or her employer of the problem and request that it be corrected. *Id.* An employee who quits his or her job without giving his or her employer such notice "ordinarily will be deemed to [have] quit without just cause and,

- 6 -

therefore will not be entitled to unemployment benefits." *Id.*, citing *DiGiannantoni v. Wedgewater Animal Hosp., Inc.*, 109 Ohio App.3d 300, 307 (10th Dist.1996).

{¶ 17} Here, the evidence supports the findings made by the Review Commission's hearing officer that, at the time she received the Step 1 Form, appellant was only "on the first step of [CHCGD's] progressive discipline process," that she "did not face inevitable discharge and could have remained employed," and that her decision to "quit after one reprimand was not reasonable."

{¶ 18} Appellant argues the Step 1 Form she received on January 7, 2014 was not the "first step" of the disciplinary process taken against her by her employer, but was actually the *second*. She contends that the first step actually occurred at the December 11, 2013 meeting between her and the new CFO and the HR manager. However, the record supports a finding that the December 11th meeting was not an actual Step 1 disciplinary proceeding against appellant, since the record shows that appellant was not given an actual Step 1 Form until January 7, 2014. Thus, at the time appellant tendered her resignation, she still had an opportunity to work with her employer to resolve the problems and issues between them.

{¶ 19} Appellant argues the common pleas court erred by reaching factual conclusions not supported by the evidence. For instance, she contends that, contrary to what the common pleas court found, she did not have sufficient time to perform the tasks assigned to her; that some of CHCGD's key employees were on leave during the time in question, which, in turn, put her further behind in meeting her tasks; and that she "worked countless hours without any compensation, in order to accomplish the impossible."

{¶ 20} Admittedly, there is evidence in the record that runs counter to the hearing officer's determinations and supports appellant's position that she quit with just cause. Most notably, the Review Commission's hearing officer determined that "[d]ue to loss of staff [appellant] had been overworked for approximately five or six months prior to the step one

- 7 -

discipline." There was also evidence that CHCGD opened two, new health centers during this time. Additionally, on the same day appellant was issued the Step 1 Form, the new CFO told her that she did not think appellant's continued employment at the company "was going to work out." However, the weight of the evidence in favor of appellant's claim that she quit *with* just cause, when compared to the weight of the evidence in favor of the Review Commission's finding that she quit *without* just cause, does not compel us to conclude that the Review Commission, as finder of fact in this case, "clearly lost its way and created such a manifest miscarriage of justice" that its decision must be reversed and a new proceeding ordered. *Eastley*, 2012-Ohio-2179 at ¶ 20.

{¶ 21} Appellant contends that the Review Commission and the common pleas court erred by relying on CHCGD's progressive discipline policy as a basis for their decisions, since the policy was administered in an unfair, discriminatory, and inconsistent manner. However, the Review Commission and the common pleas court cited CHCGD's progressive discipline policy in their respective decisions simply to show that appellant's discharge was not as imminent or inevitable as she contends. The Review Commission and the common pleas court both essentially determined that appellant "quit too soon," without availing herself of the opportunity to meet her employer's expectations or at least explain to her employer why its expectations were unreasonable, and there is sufficient evidence in the record that supports such a determination.

{¶ 22} Lastly, appellant argues the common pleas court erred by not considering decisions reached in relevant cases that occurred in other states. However, the common pleas court was not obligated to consider case precedents from other states in arriving at its decision, particularly, since all of the issues involved in this case are not matters of "first impression" in this state.

{¶ 23} In light of the foregoing, appellant's assignment of error is overruled.

{¶ 24} Judgment affirmed.

PIPER, P.J., and RINGLAND, J., concur.