[Cite as *Wheeler v. NN Metal Stampings, Inc.*, 2018-Ohio-2341.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WILLIAMS COUNTY

| | |
|---|---|
| James F. Wheeler | Court of Appeals No. WM-17-009 |
| Appellant | Trial Court No. 17 CI 026 |
| v. | |
| NN Metal Stampings, Inc., et al. | **DECISION AND JUDGMENT** |
| Appellees | Decided: June 15, 2018 |

* * * * *

Brian J. Smith, for appellant.

Cheryl L. Jennings, for appellee NN Metal Stampings, Inc.

Mike DeWine, Ohio Attorney General, and Eric A. Baum,
Managing Attorney, for appellee Director, Ohio Department of
Job and Family Services.

* * * * *

**JENSEN, J.**

## I. Introduction

{¶ 1} Appellant, James Wheeler, appeals the judgment of the Williams County Court of Common Pleas, affirming the Unemployment Compensation Review Commission's denial of his application for unemployment benefits.

## A. Facts and Procedural Background

{¶ 2} Appellant initiated this proceeding by filing an application for unemployment benefits with appellee, the Ohio Department of Job and Family Services ("ODJFS"), following his resignation from employment with appellee, NN Metal Stampings, Inc. ("employer").

{¶ 3} For a period of 14 years, appellant worked as a maintenance worker with employer. In that capacity, appellant was expected to perform as an electrician from time to time. Appellant was provided certain safety equipment to protect him while he worked on the employer's electrical systems, some of which operated at 480 volts. According to appellant, the safety gloves that employer provided him were out of date and unfit for their intended purpose. Further, appellant claimed that his coworker, who was hired in June 2016, was not provided personal protective equipment. Moreover, appellant stated that unqualified individuals were working on equipment without following lockout/tagout procedures. Appellant alleged that he informed his supervisor of these concerns on June 14, 2016.

{¶ 4} On September 1, 2016, appellant approached his supervisor to inform him of the need for new safety gloves. Employer claimed that this was the first time it had been made aware of the need for new safety equipment. Appellant's supervisor allegedly directed appellant and his coworker to "do the best they could with what they had." Later that day, appellant brought his safety concerns to an OSHA investigator that was onsite conducting an unrelated investigation.

2.

**{¶ 5}** According to the record produced below, the OSHA investigator discussed appellant's safety issues with employer, and the requested safety equipment was ordered that day. The equipment was delivered on September 9, 2016. Appellant tendered his resignation two days prior to the arrival of the equipment.

**{¶ 6}** On September 11, 2016, appellant filed an application for unemployment benefits with ODJFS. ODJFS reviewed appellant's application and issued its "determination" on October 4, 2016. In its determination, ODJFS found that "facts establish that [appellant] did not inform the employer of his/her concerns, or allow the employer reasonable time to correct the situation. * * * Therefore, no benefits will be paid until the claimant obtains employment subject to an unemployment compensation law * * *."

**{¶ 7}** Appellant appealed ODJFS's determination to the ODJFS redetermination unit. On November 10, 2016, ODJFS issued a "redetermination" in which it affirmed its determination for the same reasons that were set forth in the determination. Appellant then appealed the redetermination unit's decision to the Unemployment Compensation Review Commission.

**{¶ 8}** A telephone hearing on appellant's appeal was conducted on December 19, 2016, at which appellant testified. Appellant stated that he resigned his position with employer because he did not have the proper personal protective equipment that was necessary in order to safely address an electrical issue with one of employer's presses. He explained that he felt that "the risk of me having a fatal injury or shock or burn was

3.

just no longer worth, you know, being within, within that company." Appellant acknowledged that he did not present his concerns to the plant manager or anyone above his supervisor, but stated that he felt any safety concerns would "fall on deaf ears." In appellant's estimation, employer was attempting to mask safety concerns by directing the OSHA inspector who was onsite on September 1, 2016, to discuss safety issues with appellant's newly hired coworker instead of appellant.

{¶ 9} Following appellant's testimony, employer called its human resources manager, Jerri Stanforth. Stanforth testified concerning employer's chain of command that was explained to employees during safety training, indicating that appellant could have reported his safety concerns to his supervisor, the director of operations, or directly to Stanforth. Stanforth went on to state that she did not become aware of appellant's safety concerns until the OSHA investigator informed her on September 1, 2016. After speaking with the OSHA investigator, Stanforth "immediately ordered gloves and * * * reviewed the [personal protective equipment], and * * * it was all ordered for * * * all people." The safety equipment arrived on September 9, 2016.

{¶ 10} During cross-examination, Stanforth indicated that employees are informed during safety training that they have a right not to perform tasks that they deem to be unsafe, even when instructed to do so by their supervisors.

{¶ 11} At the conclusion of Stanforth's testimony, the parties presented arguments and the hearing officer took the matter under advisement. The next day, the hearing officer issued his decision, in which he found that appellant resigned his employment

4.

without just cause and was therefore not eligible to receive unemployment benefits. The hearing officer reasoned that appellant acted unreasonably in quitting without first reporting his safety concerns to management and allowing employer a reasonable time to address those concerns.

{¶ 12} On January 10, 2017, appellant submitted a "request for review" with the Unemployment Compensation Review Commission, appealing the hearing officer's decision. Appellant's appeal was accepted on January 25, 2017. Two weeks later, the commission issued its decision affirming the hearing officer's decision.

{¶ 13} Appellant timely appealed the commission's decision to the Williams County Court of Common Pleas, which issued its decision on September 27, 2017. In its decision, the trial court determined that appellant's arguments challenged factual determinations that were within the sole province of the Unemployment Compensation Review Commission. After reviewing the evidence contained in the record, the trial court concluded that the commission's decision was supported by sufficient, competent, and credible evidence, and was not against the manifest weight of the evidence. Accordingly, the trial court affirmed the commission's denial of appellant's application for unemployment benefits.

## B. Assignment of Error

{¶ 14} Appellant has timely appealed the trial court's decision, raising the following assignment of error:

The Decision of the Common Pleas Court, upholding the Unemployment Compensation Review Commission determination that Mr. Wheeler's resignation as a result of the Employer's unsafe and unlawful conduct was without just cause, was unlawful, unreasonable, or against the manifest weight of the evidence.

## II. Analysis

{¶ 15} In his sole assignment of error, appellant argues that the trial court's decision was against the manifest weight of the evidence.

{¶ 16} The standard of review applied by both this court and the trial court in an appeal from a just cause determination is the same. *Tzangas, Plakas & Mannos v. Administrator, Ohio Bureau of Employment Servs.*, 73 Ohio St.3d 694, 696, 653 N.E.2d 1207 (1995). In such cases, the decision of the Unemployment Compensation Review Commission will only be reversed if the court finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence. R.C. 4141.282(H). "Where the board might reasonably decide either way, the courts have no authority to upset the board's decision." *Irvine v. Unemployment Comp. Bd. of Rev.*, 19 Ohio St.3d 15, 18, 482 N.E.2d 587 (1985), citing *Charles Livingston & Sons, Inc. v. Constance*, 115 Ohio App. 437, 185 N.E.2d 655 (7th Dist.1961).

{¶ 17} The purpose of unemployment compensation is to provide financial assistance to one who is able and willing to work, but, without fault or agreement, is temporarily without a job. *Tzangas* at 697. Under R.C. 4141.29(D)(2)(a), no individual

6.

may be paid unemployment benefits for a period of unemployment that is due to the individual quitting his work without just cause. Just cause is that which an ordinarily intelligent person would find is a justifiable reason for doing or not doing a particular act. *Id.* "As a general rule, an ordinarily intelligent employee will not quit his or her job over a problem with working conditions without first bringing that problem to his or her employer's attention, requesting that it be solved, and thus giving the employer an opportunity to correct it." *Digiannontoni v. Wedgewater Animal Hosp.*, 109 Ohio App.3d 300, 308, 671 N.E.2d 1378 (10th Dist.1996).

{¶ 18} Here, the Unemployment Compensation Review Commission found that appellant quit his job with employer without first reporting his safety concerns to management and allowing employer a reasonable time to address those concerns. The record contains evidence to support the commission's findings. Indeed, Stanforth testified at the hearing that employer first became aware of appellant's safety concerns on September 1, 2016, which was appellant's last day on the job. Stanforth immediately addressed appellant's concerns by having the requested safety equipment ordered. The equipment was delivered eight days later, a fact of which appellant would have been aware had he not resigned on September 7, 2016.

{¶ 19} "[N]otice alone is not sufficient to establish just cause. The purpose of notice is to 'give the employer an opportunity to solve the problem before the employee quits the job.' Merely notifying the employer of the problem, without giving the employer the opportunity to correct the problem, does not accomplish this goal."

7.

(Internal quotations omitted.) *Cline v. State*, 4th Dist. Washington No. 98CA5, 1999 Ohio App. LEXIS 4463, *7 (Sept. 15, 1999).

{¶ 20} Appellant disputed Stanforth's testimony by stating that he actually informed his supervisor of his safety concerns in June 2016. Assuming appellant's claim is accurate, the commission found that appellant failed to address his safety concerns with management, which he was entitled and expected to do according to Stanforth's testimony. Appellant continued to work for another three months despite his alleged safety concerns, even though the employer's safety policies direct employees to cease work when the employee feels that it is unsafe to continue, and permit the employee to disregard his supervisor's orders for safety reasons.

{¶ 21} As indicated above, our review in this case is limited to a determination of whether the commission's decision was unlawful, unreasonable, or against the manifest weight of the evidence. In light of Stanforth's testimony, we find that the record supports the commission's determination that appellant acted unreasonably in resigning his employment without allowing employer to address his safety concerns. Thus, the commission's decision was not unlawful, unreasonable, or against the manifest weight of the evidence.

8.

**{¶ 22}** In an effort to avoid this conclusion, appellant cited two recently decided cases for the first time during oral argument.[1] The first case referenced by appellant was *Kelly v. Stark Cty. Commrs.*, 5th Dist. Stark No. 2017CA000148, 2018-Ohio-950.

**{¶ 23}** *Kelly* involved the resignation of a staff attorney who was employed by the Stark County Probate Court. After being summoned into the probate court judge's chambers upon the return to work from a prolonged medical leave, the staff attorney tendered his resignation without speaking to the judge. The staff attorney claimed that he quit because he felt that he was about to be terminated and wanted to avoid the appearance of a termination on his employment record. After tendering his resignation, the staff attorney filed a claim for unemployment benefits, which was denied at each level of review. On appeal before the Fifth District, the court affirmed the denial of the staff attorney's claim after noting that the staff attorney quit his employment without speaking to the judge despite having no prior disciplinary history. *Id.* at ¶ 24. Therefore, the court found that the staff attorney's inference that he would be terminated was not supported by the record. *Id.*

**{¶ 24}** The second case cited by appellant during oral argument is *Barno v. Dir., ODJFS*, 8th Dist. Cuyahoga No. 105933, 2018-Ohio-1196. In *Barno*, the Eighth District reversed ODJFS's denial of unemployment benefits to Barno, who quit his job after his

---

[1] We subsequently granted the parties leave to file supplemental briefs addressing these cases. Appellant filed his supplemental brief on May 14, 2018, and ODJFS filed its supplemental brief the following day.

employer failed to adequately address his complaints that he was being underpaid. The Unemployment Compensation Review Commission denied Barno's claim based upon its finding that he did not have just cause to resign his employment. In arriving at its decision, the commission noted the time that elapsed between Barno's awareness of workplace issues and his resignation, Barno's failure to report the workplace issues to anyone other than his immediate supervisor, and the reasonableness of the employer's failure to address Barno's concerns. *Id.* at ¶ 33.

{¶ 25} On appeal to the Eighth District, the court found that the commission's decision was against the manifest weight of the evidence. Initially, the court took issue with the commission's reasoning, stating that "[t]here is no requirement that an employee quit 'immediately' after a concern arises to be eligible for unemployment compensation." *Id.* at ¶ 34. Moreover, the court found that Barno's failure to report his concerns up the chain of command was not fatal to his claim for unemployment compensation because "raising an issue with management is sufficient evidence that the employer had knowledge of the alleged problem." *Id.* at ¶ 35. The court also took issue with the commission's focus on the reasonableness of the employer's conduct to justify the denial of benefits. Given the fact that a just cause determination is to be made based upon the conduct of the employee, the court held that the commission's reliance upon the reasonableness of the employer was improper. *Id.* at ¶ 36.

{¶ 26} Ultimately, the court found that Barno quit his job with just cause because unrefuted, credible evidence established that Barno was not paid what the employer

10.

promised to pay him during his job interview. The court stated that the pay discrepancy was a "significant reason" for Barno's resignation. *Id.* at ¶ 39. The court found that Barno repeatedly raised this issue with his immediate supervisor, and only resigned after a "reasonable amount of time" had elapsed during which the employer failed to remedy the issue. *Id.*

{¶ 27} Upon consideration, we find that the foregoing cases cited by appellant are unavailing. Indeed, we find that *Kelly* actually supports the denial of appellant's unemployment claim insofar as it stands for the proposition that an employee does not establish just cause for resigning from employment where he does not first notify his employer of employment-related issues and afford the employer an opportunity to address and correct the issues. In *Kelly*, the staff attorney provided no notice whatsoever. Here, appellant arguably provided notice, but failed to provide the employer an opportunity to correct the issue prior to his resignation.

{¶ 28} In *Barno*, the court found that just cause supported Barno's resignation because he repeatedly notified his employer of underpayments *and* allowed the employer a reasonable amount of time to address such underpayments. Here, Stanforth's testimony demonstrates that appellant resigned his employment without providing employer with a reasonable opportunity to address his safety concerns. Thus, we find that *Barno* is distinguishable from this case.

11.

**{¶ 29}** Having concluded that the commission's decision was not unlawful, unreasonable, or against the manifest weight of the evidence, we find appellant's sole assignment of error not well-taken.

### III.  Conclusion

**{¶ 30}** In light of the foregoing, the judgment of the Williams County Court of Common Pleas is affirmed.  Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.          _____
                                                 JUDGE

James D. Jensen, J.          

                                            _____
Christine E. Mayle, P.J.                                      JUDGE
CONCUR.

                                            _____
                                                 JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.