[Cite as *Mason v. Emerald Environmental Servs., Inc.*, 2023-Ohio-1418.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Gregory S. Mason                                   Court of Appeals No. L-22-1185

     Appellant                               Trial Court No.  CI0202103846

v.

Emerald Environmental Services,
Inc. et al.,

     Defendant

and

Ohio Department of Job and
Family Services                                   **DECISION AND JUDGMENT**

     Appellee                                Decided:  April 28, 2023

* * * * *

Francis J. Landry, for appellant.

Dave Yost, Ohio Attorney General, and
Eric A. Baum, Assistant Attorney General, for appellee.

**SULEK, J.**

{¶ 1} This is an accelerated administrative appeal from the judgment of the Lucas

County Court of Common Pleas, which affirmed the Ohio Unemployment Compensation

Review Commission's ("the Commission") denial of unemployment benefits to appellant Gregory S. Mason. Mason contends that the trial court erred when it upheld the Commission's determination that he quit work without just cause. Because the Commission's determination was not unlawful, unreasonable, or against the manifest weight of the evidence, the trial court's judgment is affirmed.

## I. Facts and Procedural Background

{¶ 2} Between 2017 and 2020, Mason worked as a part-time safety specialist and industrial hygienist for Emerald Environmental Services, Inc. ("Emerald"). Mason worked approximately ten hours per week at a rate of $25.00 per hour, often traveling from his home in Toledo, Ohio to locations in or around Cleveland, Ohio. In addition to his part-time employment, Mason worked full-time for the University of Toledo until August 2020, when his position was eliminated due to the economic conditions surrounding Covid-19.

{¶ 3} Around the same time his employment at the university ended, Mason noticed that he was getting less part-time work from Emerald. Eventually, in late 2020, Emerald notified Mason that its business was changing and that it no longer needed Mason for part-time work.

{¶ 4} On or around December 11, 2020, however, Emerald offered Mason a full-time position paying $23.00 per hour with health and retirement benefits. The offer letter from Emerald explained that the position would be based out of Kent, Ohio, and defined that the duties would include, but not be limited to, "waste management, environmental

2.

and remediation related services in Ohio, Michigan, Indiana, Kentucky, Pennsylvania, Maryland, West Virginia, Virginia, and North Carolina." The offer letter further stated that the hours of work were client dependent, "so 2nd and 3rd shift are not uncommon." Mason initially accepted the offer, but ultimately changed his mind and rejected it.

{¶ 5} Mason then applied for unemployment benefits. On March 23, 2021, the Director of the Unemployment Compensation Review Commission determined that Mason qualified for benefits. On August 10, 2021, the Director affirmed that initial determination. Emerald appealed the August 10, 2021 decision, and a hearing officer of the Unemployment Compensation Review Commission subsequently conducted a hearing where both parties presented evidence.

{¶ 6} At the hearing, Mason described the end of his part-time employment and the offer of full-time employment from Emerald:

> [My part-time] arrangement went on for three years until late-2020. And as I said, the work diminished considerably so I went to Brian and I said, "Look, I see that, you know, I'm not having much work." And he said, "Well, I'm changing my business plan." And, um, he explained it to me. And it was centered around a position where there was a lot of travel and it was based out of Kent, Ohio. And he, um, subsequently sent me an offer letter for that position.

3.

Later in the hearing, Mason elaborated:

> [T]here was some issues with Brian and I in that, how that went down because we, how I found out that I was not employed anymore is because I wasn't getting paid. And so I texted him and I say, "Hey, Brian. I didn't get my paycheck." And then he called me. He said, "I thought we talked this over. My business is going in a different direction." And so, um, that was his offer to me and, um, you know, initially I was very desperate and wanted to accept the offer and get and keep employment * * *."

{¶ 7} Mason testified that he ultimately did not accept the full-time position from Emerald for the following reasons: (1) he did not want to take a pay reduction from $25.00 per hour to $23.00 per hour; (2) the position was based out of Kent, Ohio, which was three hours away from his house; (3) he believed the job involved extensive travel; (4) he had a master's degree and over 40 years of experience, and this job required only two years of experience and a driver's license with a bachelor's degree preferred; (5) the job description mentioned that second and third shifts were not uncommon; (6) his girlfriend was disabled and having health problems; and (7) he had five kids that lived in Toledo. In sum, Mason testified that the offered position was not a good fit, and would not be a good career move.

{¶ 8} When asked by the hearing officer whether he discussed those reasons with Emerald, Mason testified that he did not recall, and that "I'm not sure I discussed all those reasons with [the owner of Emerald], but he should have known." Regarding that

4.

same topic, Emerald asked Mason on cross-examination if he ever sought clarification on where he would be working, to which Mason replied: "Why would I? The offer letter clarifies where I'm working at." Mason expounded that he did not feel there was any sense in going back to Emerald to clarify the offer because he felt that the position was not close to what he would have expected given his 40 years of experience.

{¶ 9} The other witness to testify at the hearing was Brian Grimm, one of the co-owners of Emerald. Grimm testified that Mason's part-time position was being incorporated into the full-time position, and that the full-time position involved performing similar inspection services to what Mason had been doing on a part-time basis. Grimm stated that Mason initially accepted the offer, but then unexpectedly turned around and declined it, resulting in Mason's separation from Emerald. According to Grimm, Mason explained that he could not do the job because his girlfriend was ill.

{¶ 10} As to the travel aspect of the job, Grimm testified that Emerald had just obtained a client who had a lot of project needs in the Toledo and Detroit areas. Because Mason was already traveling from Toledo to Cleveland for his prior assignments, Grimm felt that this new client would considerably reduce Mason's travel. Grimm believed that the new full-time position would be a perfect fit for Mason because it was in his area, it offered health benefits, and the timing was good because Emerald needed someone to do the work and Mason had just lost his full-time job with the University of Toledo. Grimm testified that he would have been willing to work with Mason regarding the position because Emerald had a specific client need in the Toledo/Detroit area, and instead of

5.

Mason doing the work, Emerald now has to dispatch someone from Kent, Ohio to meet the client's needs.

{¶ 11} On cross-examination, Mason asked how his certifications and credentials related to the full-time position and why he was offered a low salary. Regarding the certifications and credentials, Grimm responded that Mason's credentials were not necessarily required for the part-time job that he had been doing, but were a nice add-on. Regarding the salary, Grimm testified that he could not speak to Mason's financial circumstances and career aspirations, but when Mason approached Emerald saying that he was desperate, Emerald stepped up and offered him full-time work with benefits.

{¶ 12} Following the hearing, the hearing officer issued her decision concluding that Mason quit his employment with Emerald without just cause. The hearing officer determined that "[Mason] was not separated from employment due to a layoff or lack of work," but that he "was already employed part-time by the employer, accepted an offer of full-time employment and subsequently quit." In addition, the hearing officer determined that Emerald offered Mason full-time work at a gross weekly wage of $920.00, and continuing work was available to Mason had he not rescinded his acceptance of full-time employment. Finally, the hearing officer reasoned that Mason did not provide evidence that he made any reasonable inquiry into whether the full-time work and travel requirements were materially different than the work and travel requirements he already had as a part-time employee. The hearing officer, therefore, modified the Director's determination, and suspended Mason's unemployment benefit rights.

6.

{¶ 13} Mason filed a request for review of the hearing officer's decision, which the Commission disallowed.

{¶ 14} Thereafter, Mason filed a notice of administrative appeal in the Lucas County Court of Common Pleas. Following briefing by the parties, the trial court entered its judgment on July 15, 2022, affirming the decision of the Commission.

## II. Assignment of Error

{¶ 15} Mason has timely appealed the trial court's July 15, 2022 judgment and asserts one assignment of error:

> The trial court erred in determining that Appellant failed to have quit (sic) with cause and/or declined a job offer for good cause.

## III. Analysis

{¶ 16} The standard of review in an appeal from an unemployment compensation case is the same in the appellate courts as it is in the trial courts. *Tzangas, Plakas & Mannos v. Admr., Ohio Bur. Of Emp. Servs.*, 73 Ohio St.3d 694, 696-697, 653 N.E.2d 1207 (1995); *Wheeler v. NM Metal Stampings, Inc.*, 6th Dist. Williams No. WM-17-009, 2018-Ohio-2341, ¶ 16. Under R.C. 4141.282(H), "[i]f the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission."

{¶ 17} Under R.C. 4141.29(D)(2)(a), "no individual may serve a waiting period or be paid benefits under the following conditions: * * * (2) For the duration of the

7.

individual's unemployment if the director finds that: (a) The individual quit work without just cause or has been discharged for just cause in connection with the individual's work." "The claimant has the burden of proving [his] entitlement to unemployment compensation benefits under this statutory provision, including the existence of just cause for quitting work." *Irvine v. State Unemp. Comp. Bd. of Rev.*, 19 Ohio St.3d 15, 17, 482 N.E.2d 587 (1985). However, "the Unemployment Compensation Act is to be liberally construed in favor of beneficiaries." *LaChapelle v. Ohio Dept. of Job & Family Servs.*, 184 Ohio App.3d 166, 2009-Ohio-3399, 920 N.E.2d 155, ¶ 17 (6th Dist.); *see also* R.C. 4141.46.

{¶ 18} In this appeal, Morris maintains the hearing officer abused her discretion in finding that: (1) he quit working at Emerald; and (2) he quit without just cause.

### A. Competent, credible evidence supports the conclusion that Mason quit his employment.

{¶ 19} Mason first contends that the hearing officer did not fully comprehend the series of events involving his separation of employment and re-offer of employment from Emerald. Mason argues that the hearing officer's finding that he quit his employment is against the manifest weight of the evidence because, as found by the Director, Emerald ended his part-time employment, stopped paying him, and later offered him the new, full-time position, which he rejected.

{¶ 20} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being

8.

against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus; *Midwest Terminals of Toledo Internatl., Inc. v. Dir., Ohio Dept. of Job & Family Servs.*, 6th Dist. Lucas No. L-15-1193, 2016-Ohio-973.

{¶ 21} For purposes of unemployment compensation, "[t]he term 'quit' connotes a 'voluntary act by an employee not controlled by the employer.'" *Elliott v. Bedsole Transp., Inc.*, 6th Dist. Lucas No. L-11-1004, 2011-Ohio-3232, ¶ 13, quoting *Henize v. Giles*, 69 Ohio App.3d 104, 111, 590 N.E.2d 66 (4th Dist.1990); *see also Pryor v. Dir., Ohio Dept. of Job and Family Servs.*, 8th Dist. Cuyahoga No. 110403, 2021-Ohio-4315, ¶ 13; *Meinerding v. Coldwater Exempted Village School Dist. Bd. of Edn.*, 3d Dist. Mercer No. 10-19-06, 2019-Ohio-3611, ¶ 20; *Watts v. Community Health Ctrs. of Greater Dayton*, 12th Dist. Warren No. CA2015-07-068, 2015-Ohio-5314, ¶ 15.

{¶ 22} Upon review, the record contains competent, credible evidence that Mason quit his employment. Grimm testified that the part-time position was being incorporated into the full-time position and that Mason's separation occurred when he declined the full-time offer. In addition, Grimm testified that Emerald would have worked with Mason on continuing his part-time employment because the company had a need for the work to be done. Thus, Grimm's testimony supports the conclusion that Mason chose to quit his employment with Emerald.

{¶ 23} Furthermore, Mason's testimony does not clearly contradict that conclusion. Mason did not specify any dates when his part-time employment ended or

9.

when the offer of full-time employment was made.  Instead, Mason's testimony indicated that there were ongoing discussions and that the ending of the part-time position coincided with the offer of the full-time position.  Based on the testimony presented, therefore, there is some competent, credible evidence supporting the hearing officer's finding that Mason quit his employment at Emerald.

## B.  Competent, credible evidence supports the conclusion that Mason quit without just cause.

{¶ 24} The second, and primary, argument that Mason raises is that the hearing officer erred when she determined that Mason quit without just cause or declined a job offer without good cause.  Notably, the hearing officer made her decision under R.C. 4141.29(D)(2)(a), which prohibits the payment of benefits to persons who quit work without just cause.  She did not reference R.C. 4141.29(D)(2)(b), which prohibits the payment of benefits to persons who have "refused without good cause to accept an offer of suitable work * * *."  Because the hearing officer limited her decision to R.C. 4141.29(D)(2)(a), and because the record supports the hearing officer's finding that Mason quit his job, the court's analysis will be limited to whether Mason quit without just cause as described in R.C. 4141.29(D)(2)(a).

{¶ 25} "[T]raditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Tzangas*, 73 Ohio St.3d at 697, 653 N.E.2d 1207, quoting *Irvine*, 19 Ohio St.3d at 17, 482 N.E.2d 587; *Wheeler*, 6th Dist. Williams No. WM-17-009, 2018-Ohio-2341, at ¶

10.

17. "Under this standard, ' "an employee is required to cooperate with the employer to resolve work-related problems." ' " *Boynton v. Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 21AP-481, 2022-Ohio-2597, ¶ 10, quoting *Watkins v. Dir., Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 06AP-479, 2006-Ohio-6651, ¶ 21, quoting *Stapleton v. Ohio Dept. of Job & Family Servs.*, 163 Ohio App.3d 14, 2005-Ohio-4473, 836 N.E.2d 10, ¶ 32 (7th Dist.). Thus, "[a]s a general rule, an ordinarily intelligent employee will not quit his or her job over a problem with working conditions without first bringing that problem to his or her employer's attention, requesting that it be solved, and thus giving the employer an opportunity to correct it." *Wheeler* at ¶ 17; *see also Boynton* at ¶ 10. "The determination of whether just cause exists necessarily depends upon the unique factual considerations of the particular case." *Irvine* at 17.

{¶ 26} In her decision, the hearing officer reasoned that Mason quit his job despite continuing work being available to him and despite the increase in gross weekly wages from $250.00 to $920.00. She also noted that Mason "has not provided evidence to establish that he made any reasonable inquiry into whether the job offered to him was materially different from the part-time work he had already been performing and whether the potential travel posed in the job offer was materially different than the travel he was already doing as a part-time employee."

{¶ 27} On appeal, Mason argues that the hearing officer erred, and points to several factors that he believes support a finding that he quit his employment with just cause. Specifically, Mason cites a substantial reduction in pay, increased travel and

11.

travel costs, a significant reduction in job responsibilities, an increase in expected physical labor, and the possibility of working second and third shifts.

{¶ 28} Importantly, however, Mason did not raise any of these concerns with Emerald, and instead conveyed only that he could not take the position because his girlfriend was having health problems. Grimm's testimony established that if Mason had raised these concerns with Emerald, Mason would have learned that the full-time position was an increase in pay when considering health insurance and retirement benefits. He also could have learned that the job was focused on a specific client in Toledo and Detroit and would have involved potentially less travel, and that he would be doing comparable work to what he had been doing on a part-time basis. Finally, he could have learned that Emerald was willing to work with him to come to a suitable employment agreement because it had a client need that it hoped Mason could meet. Thus, the record demonstrates that Mason unilaterally chose to leave his employment, and consequently he was not involuntarily unemployed through no fault or agreement of his own.

{¶ 29} Accordingly, the hearing officer's determination that Mason quit his employment without just cause is not unlawful, unreasonable, or against the manifest weight of the evidence.

12.

## IV. Conclusion

{¶ 30} For the foregoing reasons, Mason's assignment of error is not well-taken, and the judgment of the Lucas County Court of Common Pleas is affirmed.  Mason is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
Gene A. Zmuda, J.                                                                JUDGE

_____
Charles E. Sulek, J.                                                             JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.