OPINION
 {¶ 1} Appellant-appellant, Deborah M. Watkins, appeals from a judgment of the Franklin County Court of Common Pleas, affirming a decision of the Unemployment Compensation Review Commission ("commission") that denied appellant's request for unemployment compensation. Appellant assigns a single error:
 The trial court abused its discretion when it affirmed the Unemployment Compensation Review Commission's Decision of July 21, 2005, when it failed to recognize that Appellant quit her job for just cause.
Because the commission did not abuse its discretion in determining appellant quit her job without just cause, we affirm.
 {¶ 2} On August 20, 2004, appellant filed an application seeking unemployment compensation benefits as a result of her resigning her position of employment with Karl HC, LLC ("Karl"). On September 9, 2004, the director of the Ohio Department of Job and Family Services issued an initial determination that appellant quit without just cause. Appellant appealed that determination, and the director transferred jurisdiction to the review commission pursuant to R.C. 4141.281. The appeal was scheduled for hearing before a hearing officer on February 14, 2005.
 {¶ 3} According to the evidence adduced at that hearing, appellant was employed with Karl at Villa Angela Care Center. She began working for Karl in 1996 and resigned on July 21, 2004. In her last position with Karl, she served as a registered nurse and night supervisor; she averaged roughly 40 hours per week. As supervisor, appellant's duties were to oversee the unit, making sure everything was running properly, and to assist the staff nurses if they needed help. As a result, she performed supervisory functions, and "a lot of times had to work the floor . . . too often." (Tr. 16.) Her actual last day of work was July 8; she left for vacation on July 9 and was scheduled to return on July 21.
 {¶ 4} As appellant explained, before leaving for vacation she complained about the amount of work she was being forced to do, was called into administrative offices on an unspecified date and was advised of a demotion to staff nurse that resulted in no change in pay, no change in benefits, but a change in schedule. As a result of the schedule change, appellant would be required to abandon the Monday through Friday, 11:00 p.m. to 7:00 a.m. hours she was working as night supervisor and assume the hours of a staff nurse, including working every other weekend. She explained to Debra Lutsch, Corporate Clinical Consultant and Director of Nursing, that she did not want to work weekends because of other commitments.
 {¶ 5} Appellant testified that she asked Lutsch about the reasons for the demotion, but was never given any reasons other than attendance. Unwilling to face the humiliation she felt would confront her in returning to work as a staff nurse, appellant called Lutsch on July 21 following her return from vacation and advised that she was resigning her employment. She told Lutsch she was resigning because she "had to have any understanding as to why she was demoting me. I felt that was one public humiliation for me." (Tr. 12.) In the end, appellant stated she resigned because she did not understand why she was being demoted from the position of night supervisor to staff nurse.
 {¶ 6} By contrast, Lutsch testified on behalf of Karl and pointedly stated that she did not tell appellant she was to be demoted and no one at work so told her. Rather, on July 6, appellant told Lutsch appellant was having a hard time both handling the role of supervisor of the building and working the floor when a nurse called off. Lutsch told her that if she had to work the floor, she did not have to act the supervisor; rather, each nurse could manage his or her unit and utilize appellant if an emergency arose. Lutsch further offered to make appellant's position at Karl easier by assigning her to her own unit rather than working the whole building. Lutsch explained it would involve no change in pay or benefits, but appellant would stop serving as a supervisor to serve as an R.N. staff nurse. With the change, she would have a shorter schedule, a set unit, a certain number of patients, and would be relieved of responsibility for the whole building.
 {¶ 7} According to Lutsch, appellant wanted to contemplate the offer, as she thought it might be a better option for her. Appellant hesitated, though, in having to work every other weekend, because she did not know if she could do so with her other activities. Appellant was to get back to Lutsch and let her know of appellant's plans. Lutsch next heard from appellant on July 21, when appellant called to resign. While Lutsch could recall no reason appellant proffered for resigning from employment, Lutsch assumed appellant resigned because she did not feel the position would work for her; appellant simply said she felt she could not come back. Lutsch testified that had appellant wanted to stay on as night supervisor, she probably would have remained in that position, because no one else was scheduled for the position on the evening of July 21. According to Lutsch, appellant never asked Lutsch to put into writing why appellant was being "demoted."
 {¶ 8} Similarly, Maureen Ferega, the Director of Human Resources for Karl, testified she did not authorize any demotion for appellant. She nonetheless was aware of a change in positions for appellant that would provide better hours, though "not necessarily" a demotion. (Tr. 39.)
 {¶ 9} Relying almost exclusively on the testimony of appellant, the hearing officer determined that appellant quit with just cause because she was demoted to a staff nurse position that involved a substantial change in her schedule at Villa Angela Care Center. The hearing officer concluded Karl neither supplied appellant with a written explanation for the demotion nor presented sufficient information that warranted appellant's demotion.
 {¶ 10} Karl requested review before the commission. The commission allowed the request, and further concluded it would issue its decision based solely on a review of the record with no further hearing. Relying almost exclusively on the testimony of the employer's witnesses, the commission determined appellant quit work without just cause.
 {¶ 11} Specifically, the commission determined that prior to leaving for vacation, appellant discussed her work schedule with Lutsch, as well as the stress she experienced in both providing direct care for patients and supervising the third shift. According to the commission, Lutsch informed appellant that after vacation she could return as a staff nurse on a third shift without any loss of wages or reduction in pay; she, however, would need to work some weekends, as any staff nurse would. In its findings of fact, the commission concluded that on July 21 appellant called to speak with Lutsch prior to the start of her shift and, at that time, resigned her position: "Claimant felt that coming back as a staff nurse would have been embarrassing and that she did not wish to work weekends." (Commission Decision, 2.)
 {¶ 12} While the hearing officer felt the change in duties constituted a demotion because of a substantial change in claimant's schedule, the commission disagreed. Noting the changed duties involved no reduction in pay and allowed claimant to continue to work nights, the commission determined the required work on every other weekend did not constitute a substantial change in her schedule or a unilateral violation of any contract between appellant and Karl.
 {¶ 13} Appellant appealed to the common pleas court where, following full briefing, the court determined that the evidence in the record supports both the "conclusion of the Hearing Officer and the Commission." (April 6, 2006 Decision, 4.) Because, as the court noted, the standard of review does not permit it to substitute its judgment for that of the commission on conflicting evidence, the court affirmed the decision of the commission.
 {¶ 14} Appellant appeals, essentially raising two issues in her appeal: (1) whether, without a hearing, the commission may disregard the factual findings of the hearing officer and rely instead on the testimony the hearing officer apparently did not find to be credible; and (2) whether the evidence supports a conclusion that appellant quit without just cause.
 {¶ 15} R.C. 4141.29 sets forth the statutory authority for an award of unemployment benefits and provides that "[e]ach eligible individual shall receive benefits as compensation for loss of remuneration due to involuntary total or partial unemployment in the amounts and subject to the conditions stipulated in this chapter." In that context, R.C.4141.29(D)(2)(a) establishes that a claimant who quit his or her work without just cause or has been discharged for just cause in connection with his or her work is not entitled to unemployment compensation benefits. The claimant has the burden to prove his or her entitlement to benefits. Irvine v. Unemployment Comp. Bd. of Review (1985),19 Ohio St.3d 15, 17.
 {¶ 16} The term "just cause" has been defined "in the statutory sense, [as] that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." Irvine, supra, quotingPeyton v. Sun T.V. (1975), 44 Ohio App.2d 10, 12. The determination of just cause must be analyzed in conjunction with the purpose of the unemployment compensation business and industrial conditions.Irvine, supra. Whether just cause exists to support an employee's quitting depends on the factual circumstances of each case and is largely an issue for the trier of fact. Irvine, supra; Peterson v.Director, Ross App. No. 03CA2738, 2004-Ohio-2030. Determinations of purely factual questions are primarily within the province of the hearing officer and the commission. "Upon appeal, a court of law may reverse such decisions only if they are unlawful, unreasonable, or against the manifest weight of the evidence." Irvine, supra, at 17-18;Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Serv. (1995),73 Ohio St.3d 694, paragraph one of the syllabus.
 {¶ 17} A reviewing court is not permitted to make factual findings, determine the credibility of witnesses, or substitute its judgment for that of the commission; where the commission might reasonably decide either way, the courts have no authority to upset the commission's decision. Id. at 18; Simon v. Lake Geauga Printing Co. (1982),69 Ohio St.2d 41, 45 (noting that "[a] reviewing court can not usurp the function of the triers of fact by substituting its judgment for theirs"); Aliff v. Ohio Dept. of Job Family Serv. (Sept. 25, 2001), Franklin App. No. 01AP-18. Rather, the court's duty or authority is to determine whether the evidence of record supports the commission's decision. Irvine, at 18. If some evidence supports the commission's decision, the reviewing court, whether a common pleas court or court of appeals, must affirm. Crisp v. Scioto Residential Serv., Inc., Scioto App. No. 03CA2918, 2004-Ohio-6349. Where the board might reasonably decide either way, reviewing courts must leave the board's decision undisturbed. Id.
 {¶ 18} Within those parameters, appellant initially contends the commission wrongfully rejected the hearing officer's factual conclusions and substituted its own. Appellant does not challenge the constitutionality of the statutory framework under which the commission rendered its order, but contends the commission's decision to reverse the hearing officer contravenes the statutory directive. Appellant contends the common pleas court should have corrected the error, and because it did not, this court is obliged to reinstate the hearing officer's factual conclusions and determine "just cause" accordingly. Cognizant of the case law precluding reviewing courts from making factual findings or determining the credibility of witnesses, appellant nonetheless asserts that because the hearing officer was the only person to see the witnesses testify, the commission should have deferred to the hearing officer's credibility determinations. Although appellant cites cases generally establishing that credibility determinations are for the trier of fact, appellant points to no cases which suggest the commission is required to defer to the factual determinations of its hearing officer.
 {¶ 19} R.C. 4141.281 sets forth the procedure for appealing determinations of benefit rights or claims for benefit determinations. It establishes two levels of hearing before the commission: the hearing officer level and the review level. R.C. 4141.281(C)(2). When the director transfers an appeal to the commission, the hearing before the hearing officer is de novo. R.C. 4141.281(C)(3). After the hearing officer affirms, modifies, or reverses the determination of the director, an interested party may request the commission review the matter. "At the review level, the commission may affirm, modify, or reverse a hearing officer's decision or remand the decision to the hearing officer level for further hearing." R.C. 4141.281(C)(4). After reviewing the record, the commission may "affirm the decision of the hearing officer; provide for the appeal to be heard or reheard at the hearing officer or review level; provide for the appeal to be heard at the review level as a potential precedential decision; or provide for the decision to be rewritten without further hearing at the review level. When a further hearing is provided or the decision is rewritten, the commission may affirm, modify, or reverse the previous decision." R.C. 4141.281(C)(6).
 {¶ 20} Nothing in R.C. 4141.281(C)(6) requires the commission, at the review level, to conduct an additional hearing. While the statute allows the commission the flexibility to remand the matter for further hearing before the hearing officer, or to conduct a hearing at the review level, it does not require that the commission do so. Yet the commission retains the ability to affirm, modify, or reverse a hearing officer's decision. Moreover, on this record we cannot conclude the commission abused its discretion in not conducting an additional hearing to personally assess the credibility of the witnesses. Cf. Civ.R. 53 (allowing the trial court on review of a magistrate's decision to redetermine the credibility of the witnesses without taking further evidence).
 {¶ 21} Because the commission retained the latitude to determine the credibility of the witnesses, we must ascertain whether the evidence in the record supports the commission's conclusion that appellant resigned without just cause. A significant factor in determining just cause to resign is the employee's fault in creating the situation that led to resignation. Stapleton v. Ohio Dept. of Job Family Servs.,163 Ohio App.3d 14, 2005- Ohio-4473. Thus, "an employee is required to cooperate with the employer to resolve work-related problems. * * * If the employee does not cooperate or give the employer sufficient time to accommodate the employee's needs or concerns, that employee will usually not be found to have just cause if he or she quits." (Citations omitted.) Id. at ¶ 32, citing Irvine, supra, at 18.
 {¶ 22} As a result, "employees who experience problems in their working conditions must make reasonable efforts to attempt to solve the problem before leaving their employment. Essentially, an employee must notify the employer of the problem and request it be resolved, and thus give the employer an opportunity to solve the problem before the employee quits the job; those employees who do not provide such notice ordinarily will be deemed to quit without just cause and, therefore will not be entitled to unemployment benefits." Shephard v. Ohio Dept. of Job Family Servs., 166 Ohio App.3d 747, 2006-Ohio-2313, at ¶ 26, quotingDiGiannantoni v. Wedgewater Animal Hosp., Inc. (1996),109 Ohio App.3d 300, 307. By contrast, if an employee notifies the employer of a problem and the employer fails to address it, the employee may not need to pursue the matter further. Krawczyszyn v. Ohio Bur. of Emp. Servs.
(1989), 54 Ohio App.3d 35.
 {¶ 23} Here, according to the employer's evidence, appellant approached Lutsch and explained the difficulty she encountered in serving as both the night supervisor with its attendant responsibility for the entire building, as well as a floor nurse when the need arose. In response, Lutsch offered to reduce appellant's stress by offering appellant her own unit and eliminating her responsibility for the whole building. The position involved no change in pay or benefits, although it involved her working every other weekend with other staff nurses. Appellant advised that she wanted to think about it, but thought it might be a better option for her. With the change, according to Lutsch, appellant would have had a shorter schedule, a set unit, a certain number of patients, and freedom from worry about the entire building. Appellant was to get back to her and let Lutsch know what appellant wanted to do regarding the change in positions. Lutsch further testified that had appellant wanted to remain the night supervisor, she probably could have stayed in that position. Lending support to Lutsch's statement, Lutsch testified no one else was scheduled for night supervisor on July 21, the day appellant was to return from her vacation.
 {¶ 24} From that evidence, the commission could conclude appellant was in discussions with Lutsch about a problem with her position as night supervisor; Lutsch, on behalf of Karl, offered a solution to the problem, and appellant never responded to the proposed solution. Rather than advising the employer of any deficiency in the proposed solution and permitting the employer to address it, appellant simply resigned, proffering no reason for her decision. Nothing in the evidence suggests Karl would have been unwilling to further accommodate appellant, but appellant did not even advise Lutsch of deficiencies in the proposal, much less ask for modification of the proposal. Accepting the employer's testimony as true, the commission reasonably could conclude that an ordinary person in this situation would not quit her employment without first speaking to the employer to determine whether any modification in the proposed solution was yet possible, especially in light of appellant's having advised that she thought the proposed solution might be a better option for her. Accordingly, the commission's determination that appellant's working some weekends in exchange for reduced responsibility at the same rate of pay does not constitute a substantial change in appellant's schedule, especially in light of the fluid nature of the discussions and appellant's indication that the proposal might be acceptable, is not unlawful, unreasonable or against the manifest weight of the evidence presented in this case.
 {¶ 25} Because some competent credible evidence supports the commission's determination, we overrule appellant's single assignment of error and affirm the judgment of the common pleas court.
Judgment affirmed.
SADLER and McGRATH, JJ., concur.