[Cite as *Boynton v. Ohio Dept. of Job & Family Servs.*, 2022-Ohio-2597.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Brenda L. Boynton, | : | |
| Appellant-Appellant, | : | |
| | : | No. 21AP-481 |
| v. | : | (C.P.C. No. 21CV-1291) |
| Director, Ohio Department of Job & Family Services et al., | : | (ACCELERATED CALENDAR) |
| | : | |
| Appellees-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on July 28, 2022

**On brief:** *Law Offices of Gary A. Reeve*, and *Gary A. Reeve*, for appellant. **Argued:** *Gary A. Reeve*.

**On brief:** *Dave Yost*, Attorney General, and *David E. Lefton*, for appellee Director, Ohio Department of Job & Family Services. **Argued:** *David E. Lefton*.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, P.J.

{¶ 1} Appellant, Brenda L. Boynton, appeals from a judgment of the Franklin County Court of Common Pleas affirming the decision of the Ohio Unemployment Compensation Review Commission ("commission") disallowing Boynton's application for unemployment compensation benefits. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} From June 2018 until August 2020, Boynton worked as a customer service representative for Family Dollar Stores of Ohio, Inc. ("Family Dollar"). In this position, Boynton's duties included greeting and waiting on store customers, completing sales at the

register, opening freight boxes, and stocking shelves with merchandise. During her employment with Family Dollar, Boynton was under the care of George Barnett, Jr., M.D., due to her low back pain, leg discomfort, and heart-related issues. At Boynton's request, Family Dollar permitted her to rest one foot on a shopping basket while working to help ease her low back pain and leg discomfort. For approximately one year, Boynton's normal workday hours with Family Dollar were from 8:00 a.m. until 3:00 p.m. Beginning in April or July 2019, however, Family Dollar permitted Boynton to work reduced hours—from 8:00 a.m. until 1:00 p.m.—because of her physical ailments. Then, on either July 31 or August 1, 2020, Boynton informed her boss and manager of the store, Bart Tallman, that she was ending her employment with Family Dollar, effective August 14, 2020. Boynton provided three reasons to Tallman for her resignation: her unhappiness with Family Dollar's employee rewards program; her need to take care of her fiancé, who was in failing health; and her low back pain and leg discomfort while standing at work. Prior to her completion of the two-week notice period, Boynton had an emotionally upsetting disagreement with a co-worker. She spoke with Tallman about the disagreement, left the store, and did not return.

{¶ 3} On September 9, 2020, Boynton filed an application for unemployment compensation benefits with the Ohio Department of Job and Family Services ("ODJFS"). Boynton's physician, Dr. Barnett, answered several questions on the application. Dr. Barnett wrote he had been treating Boynton for 20 years and that she suffers from several heart-related conditions and degenerative disc disease of the lumbar spine. When asked whether he had restricted the type of work Boynton may perform, Dr. Barnett wrote: "[N]ot at this point, patient is an older individual with medical concerns." And when asked whether he had advised Boynton to quit employment, Dr. Barnett wrote: "No, but she will know when it is time to not work anymore." (Record of Proceedings at 24.)

{¶ 4} ODJFS disallowed Boynton's application, and she appealed this disallowance. After ODJFS transferred jurisdiction to the commission, a commission hearing officer conducted a telephonic hearing in the appeal. Both Tallman and Boynton testified at the hearing. On February 16, 2021, the commission hearing officer issued a decision affirming the disallowance of Boynton's application for unemployment compensation benefits. The hearing officer found that Boynton did not act reasonably

because she did not, prior to resigning from work, discuss with Family Dollar the concerns that she identified as causing her resignation. The hearing officer also noted that Boynton was under no medical restrictions at the time of her resignation, citing Dr. Barnett's statements indicating that Boynton had not been physically unable to work and that he never advised Boynton to quit working. Based on these facts, the hearing officer concluded that Boynton quit her Family Dollar employment without just cause and therefore affirmed the disallowance of Boynton's application. The commission denied Boynton's request for further review. Boynton then appealed to the trial court, which affirmed the commission's decision upon finding that it was not unlawful, unreasonable, or against the manifest weight of the evidence.

{¶ 5}  Boynton timely appeals to this court.

## II.  Assignment of Error

{¶ 6}  Boynton assigns the following error for our review:

> The Common Pleas Court's review of the whole record led to an incorrect conclusion denying unemployment compensation benefits to Appellant Brenda Boynton ("Boynton") given the manifest weight of the evidence.

## III.  Discussion

{¶ 7}  In her sole assignment of error, Boynton contends the trial court erred in affirming the commission's order disallowing her application for unemployment compensation benefits. She asserts the disallowance was against the manifest weight of the evidence. This assignment of error lacks merit.

{¶ 8}  R.C. 4141.282 governs appeals from decisions of the commission. The statute provides:

> The court shall hear the appeal on the certified record provided by the commission. If the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission.

R.C. 4141.282(H). This means a reviewing court may reverse a commission decision "only if it is unlawful, unreasonable or against the manifest weight of the evidence." *Tzangas,*

*Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694 (1995), paragraph one of the syllabus. This standard applies in "all reviewing courts, from the first level of review in the common pleas court, through the final appeal in" the Supreme Court of Ohio. *Id.* at 696. Therefore, the focus of this court's analysis is on the commission's decision rather than the common pleas court's decision. *Houser v. Dir., Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 10AP-116, 2011-Ohio-1593, ¶ 7, citing *Carter v. Univ. of Toledo*, 6th Dist. No. L-07-1260, 2008-Ohio-1958, ¶ 12. And pursuant to this standard, a reviewing court "is not permitted to make factual findings or reach credibility determinations." *Houser* at ¶ 7, citing *Tzangas* at 696, citing *Irvine v. Unemp. Comp. Bd. of Review*, 19 Ohio St.3d 15, 18 (1985). "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

{¶ 9} Here, Boynton challenges the commission's denial of her unemployment compensation benefits claim. R.C. 4141.29(A)(5) provides that an individual is eligible for unemployment compensation benefits when that individual "[i]s unable to obtain suitable work." Pursuant to R.C. 4141.29(D)(2)(a), however, a claimant is ineligible to receive such benefits if she resigned from employment without "just cause." *Hampton v. JKB Mgt. Co.*, 10th Dist. No. 18AP-719, 2020-Ohio-277. The commission denied Boynton's unemployment compensation benefits claim on this basis; it found she quit work without just cause. Boynton disagrees, arguing she resigned for just cause because Family Dollar denied her request for reasonable accommodation.

{¶ 10} "Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Rider v. Dir., Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 16AP-854, 2017-Ohio-8716, ¶ 9. Under this standard, " 'an employee is required to cooperate with the employer to resolve work-related problems. * * * If the employee does not cooperate or give the employer sufficient time to accommodate the employee's needs [and] concerns, that employee will usually not be found to have just cause if he or she quits.' " *Watkins v. Dir., Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 06AP-479, 2006-Ohio-6651, ¶ 21, quoting *Stapleton v. Ohio Dept. of Job & Family Servs.*, 163 Ohio App.3d 14, 2005-Ohio-4473, ¶ 32

(7th Dist.), citing *Irvine* at 18. " 'Essentially, an employee must notify the employer of the problem and request it be resolved, and thus give the employer an opportunity to solve the problem before the employee quits the job; those employees who do not provide such notice ordinarily will be deemed to quit without just cause, and, therefore, will not be entitled to unemployment benefits.' " *Watkins* at ¶ 22, quoting *Shephard v. Ohio Dept. of Job & Family Servs.*, 166 Ohio App.3d 747, 2006-Ohio-2313, ¶ 26 (8th Dist.). Because the existence of just cause depends on the factual circumstances of each case, this determination is primarily an issue to be resolved by the trier of fact. *James v. State Unemp. Rev. Comm.*, 10th Dist. No. 08AP-976, 2009-Ohio-5120, ¶ 11; *Perkins v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 18AP-900, 2019-Ohio-2538, ¶ 12.

{¶ 11} Evidence in the record supported the commission's disallowance of Boynton's application for unemployment compensation benefits based on the absence of just cause for her resignation from work at Family Dollar. At the commission hearing, Boynton testified there were three reasons she left her employment with Family Dollar: her unhappiness with Family Dollar's employee rewards program; her need to take care of her fiancé, who was in failing health; and her low back pain and leg discomfort while standing on the job. The commission found that Boynton resigned from employment without first raising these issues with Family Dollar. Such communication would have provided Family Dollar an opportunity to address these issues as it deemed appropriate and necessary. In this appeal, Boynton does not challenge this factual determination except to contend that Family Dollar did not reasonably accommodate her ongoing and worsening physical ailments. At the commission hearing, Boynton testified that, in the past, Family Dollar had accommodated her reported back pain and leg discomfort by granting her request for reduced work hours and allowing her to prop a foot on a basket while standing at a register. Thus, her testimony demonstrated that Family Dollar was aware she had back pain and leg discomfort while working, and it took steps, as requested by her, to address the problem. But Boynton also testified that, other than "maybe" asking to sit down during her entire shift in "a joking way," before quitting, she did not seek further accommodation with Family Dollar based on her physical ailments. (Record of Proceedings at 163.) By not apprising Family Dollar of the issue, Boynton did not provide her employer an opportunity to take further action to address that issue.

{¶ 12} Additionally, the record supported the commission's finding that Boynton was under no medical restriction when she resigned. On Boynton's application for unemployment compensation benefits, her treating physician indicated that while he diagnosed Boynton with a lumbar spine condition, he had placed her under no medical restriction concerning the type of work she could perform, and he did not advise her to quit her employment with Family Dollar based on her physical ailments. Thus, while Boynton unfortunately may have endured some back pain and leg discomfort on the job, the evidence before the commission did not show she was medically restricted from performing her job at Family Dollar without accommodation.

{¶ 13} Accordingly, we find some competent, credible evidence in the record supported the commission's conclusion that Boynton quit work without just cause, and, therefore, she was ineligible for unemployment compensation benefits. Because the trial court did not err in finding that the commission's decision disallowing Boynton's application for unemployment compensation benefits was not unlawful, unreasonable, or against the manifest weight of the evidence, we overrule her sole assignment of error.

## IV. Disposition

{¶ 14} Having overruled Boynton's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

NELSON, J., concurs.
JAMISON, J., dissents.


NELSON, J., retired, formerly of the Tenth Appellate District,
assigned to active duty under authority of Ohio Constitution,
Article IV, Section 6(C).

JAMISON, J., dissenting.

{¶ 15} Because I would reverse the decision of the trial court affirming appellees', Director, Ohio Department of Job and Family Services and Family Dollar Stores of Ohio, Inc., decision disallowing appellant's application for unemployment compensation benefits, I respectfully dissent from the majority decision.

## I. ASSIGNMENT OF ERROR

{¶ 16} Appellant assigns the following as trial court error:

[1.] The Common Pleas Court's review of the whole record led to an incorrect conclusion denying unemployment compensation benefits to Appellant Brenda Boynton ("Boynton") given the manifest weight of the evidence.

## II. LEGAL ANALYSIS

{¶ 17} In appellant's assignment of error, appellant contends that the trial court erred in affirming the commission's decision disallowing her claim for unemployment benefits. I agree with appellant.

{¶ 18} R.C. 4141.282(H) governs appeals from decisions of the commission to the court of common pleas. The statute provides:

The court shall hear the appeal on the certified record provided by the commission. If the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission.

{¶ 19} In an R.C. 4141.282 appeal, "reviewing courts may reverse just cause determinations 'if they are unlawful, unreasonable, or against the manifest weight of the evidence.' " *Shepherd Color Co. v. Dir., Ohio Dept. of Job & Family Servs.*, 10th Dist. No. CA2012-11-244, 2013-Ohio-2393, ¶ 19, quoting *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 696 (1995). This standard applies to all reviewing courts, including common pleas courts and appellate courts. *Perkins v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 18AP-900, 2019-Ohio-2538, ¶ 11, citing *Tzangas* at 696. The focus of the analysis on appeal is the commission's decision rather than the decision of the common pleas court. *Perkins* at ¶ 11, citing *Irvine v. Unemp. Comp. Bd. of Rev.*, 19 Ohio St.3d 15, 18 (1985), citing *Carter v. Univ. of Toledo*, 6th Dist. No. L-07-1260, 2008-Ohio-1958, ¶ 12.

{¶ 20} Here, the commission denied appellant's application for unemployment benefits on the grounds that she quit her employment without just cause. Pursuant to R.C. 4141.29(D)(2)(a), a claimant is ineligible to receive unemployment benefits if "[t]he

individual quit work without just cause." R.C. 4141.29(D)(2)(a); *Houser v. Dir., Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 10AP-116, 2011-Ohio-1593, ¶ 8. " 'Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.' "   *Id.*, quoting *Irvine* at 17.   "The determination of whether just cause exists necessarily depends on the unique factual considerations of the particular case." *Irvine* at 17   "A just cause determination must be consistent with the purpose of the Unemployment Compensation Act, which is to provide financial assistance to individuals who become and remain involuntarily unemployed due to adverse business and industrial conditions." *Brooks v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 08AP-414, 2009-Ohio-817, ¶ 12, citing *Tzangas* at 697.   "The act protects those employees who have no control over the situation that leads to their separation from employment." *Brooks* at ¶ 12, citing *Tzangas* at 697.

{¶ 21} In affirming the disallowance of appellant's application for unemployment compensation, the commission set forth the following reasoning:

> A claimant must act as a reasonably prudent person would act. Here, the claimant did not act as a reasonably prudent [person] would act when she resigned her employment due to dissatisfaction with a store reward program, to take care of her fiancé, and because she was experiencing back and leg pain. The claimant did not discuss any of her concerns with the employer prior to resigning her employment. The claimant was not under medical restrictions at the time of her resignation. The claimant's physician, Dr. George Barnett, supplied information to the Director's file. Dr. Barnett indicated that he was not aware of a time that the claimant was unable to work and that he never advised her to quit her employment. Therefore, the Director correctly found that the claimant quit work without just cause in connection with work.

(May 21, 2021 Commission's Decision, Ex. A, at 2.)

{¶ 22} The sole issue before this court is whether the circumstances of appellant's separation from Family Dollar entitled her to seek unemployment benefits.  In order to collect unemployment benefits, an employee who resigns from employment bears the burden of proving that he or she resigned for just cause. *Sandi Jo Turner v. Mission Essential Personnel, LLC et al.*, 10th Dist. No. 11AP-961, 2012-Ohio-5470, ¶ 9, citing

R.C. 4141.29(D)(2)(a), *Underhill v. Unemp. Comp. Rev. Comm.,* 10th Dist. No. 10AP-617, 2011-Ohio-1598, ¶ 17-18; *Irvine* at 17.   "In cases in which an employee encounters circumstances that might force resignation, the employee must first notify the employer of problems prior to resigning or risk a finding of resignation without just cause." *Sandi Jo Turner* at ¶ 9, citing *DiGiannantoni v. Wedgewater Animal Hosp., Inc.*, 109 Ohio App.3d 300 (10th Dist.1996).  The purpose of such notice is to provide the employer an opportunity to resolve the conflict before the employee is forced to resign.  *DiGiannantoni* at 307.  "Notice to the employer, however, is not alone enough to establish just cause; the employer must have a realistic opportunity to correct the problem."  *Sandi Jo Turner* at ¶ 9, citing *Underhill* at ¶ 19.

{¶ 23} A significant factor in determining whether an employee had just cause to resign is the employee's fault in creating the situation that led to his or her resignation. *Watkins v. Dir., Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 06AP-479, 2006-Ohio-6651, ¶ 21, citing *Stapleton v. Ohio Dept. of Job & Family Servs.*, 163 Ohio App.3d 14, 2005-Ohio-4473 (7th Dist.).  "Thus, 'an employee is required to cooperate with the employer to resolve work-related problems. * * * If the employee does not cooperate or give the employer sufficient time to accommodate the employee's needs or concerns, that employee will usually not be found to have just cause if he or she quits.' "  *Watkins* at ¶ 21, quoting *Stapleton* at ¶ 32, citing *Irvine* at 18.  "As a result, 'employees who experience problems in their working conditions must make reasonable efforts to attempt to solve the problem before leaving their employment.' "  *Watkins* at ¶ 22, quoting *Shephard v. Ohio Dept. of Job & Family Servs.*, 166 Ohio App.3d 747, 2006-Ohio-2313, ¶ 26 (8th Dist.)

{¶ 24} The hearing officer determined that appellant left her employment without just cause because she "resigned her employment without speaking to the employer regarding her dissatisfaction with the store reward program, need to care for her fiancé, and her back and leg pain."  (Sept. 3, 2021 Decision & Jgmt. Entry at 5.)  The record, however, does not support this finding as the testimony at the hearing establishes Family Dollar had prior knowledge that appellant experienced low back pain, and tingling and numbness in her legs while working, Family Dollar made prior efforts to accommodate appellant's worsening condition, but a further accommodation was not realistic.

{¶ 25} Appellant provided the following testimony at the hearing in response to questions from the hearing officer:

> Q. Okay. And the medical problems you had were solely in your, at least that are causing you to quit your employment, were just the pain in your back, low back and the legs. Is that accurate?
>
> A. Yes
>
> Q. Okay
>
> A. My doctor was aware of it. Plus I did tell, um, I may have mentioned it on, ah, maybe at least one occasion to Bart. And I did ask that my hours be reduced, um, by two hours per shift, which that did occur around approximately April or July of 2019. So the company did kind of, you know, help me out that way. Um, they weren't happy about it. I kind of got the impression that they really weren't happy about it, but they did it anyway.

(Apr. 1, 2021 Commission's Tr. at 159.)

{¶ 26} The evidence shows that appellant had received an accommodation for her low back issues on two occasions prior to her resignation, as Family Dollar allowed her to rest her foot on a basket while working at the register, and subsequently granted her request to work fewer hours. There is no evidence that these accommodations were provided for any reason other than appellant's low back pain, and the tingling and numbness in her legs. Bart Tallman admitted he knew appellant was having problems with her back and that she asked to work fewer hours as an accommodation for her low back pain. Thus, the evidence at the hearing unequivocally establishes that Family Dollar was on notice that appellant's ongoing low back pain and the tingling and numbness in her legs was impacting her ability to work as a customer service representative at Family Dollar, and Family Dollar had an opportunity to resolve the problem.

{¶ 27} At the commission hearing, appellant responded to the hearing officer's question about the possibility of seeking further accommodation for her low back issues:

> Q. I understand that you, you spoke to the employer around April or July of 2019 about reducing your schedule. Had you ever talked to the employer after that about anything that could be done on their end so you could keep your employment with Family Dollar?

> A. Well, not in a serious way, maybe a joking way like. 'Can I sit down all my shift? You know, since my back hurts.' * * * Um, and, and at that point, ah, I kind of got the distinct impression that I kind of wasn't doing enough work. That, you know what I'm saying? I pretty much stayed up front at the cash register. I would put away freight in between customers, as, as I was expected to do. However, there were times when I couldn't do that and the lines would get long, and I'd call someone and they'd come up and, you know, help out or whatever. Um, I just think that the structure of the way the store works, sitting down the whole shift wouldn't be an option. So to answer your question, no, I didn't because I didn't think that it would, ah, be approved and I, I really didn't know what my options were at that point.

(Tr. at 163-64.)

{¶ 28} Appellant's testimony establishes that allowing her to sit while working as a customer service representative would not have been realistic. Appellant's testimony in this regard is unchallenged. At a minimum, appellant's testimony shifted the burden to Family Dollar to produce some evidence that a further accommodation was realistic. Family Dollar presented no evidence at the hearing to support such a finding. Even if the commission hearing officer found appellant's testimony unworthy of belief, a finding which is not expressed in the hearing officer's decision, there is no evidence rebutting her claim that a further accommodation was unrealistic. Moreover, after Tallman had actual notice appellant would be resigning in two weeks due, in part, to low back pain and the tingling and numbness in her legs while standing on the job, he offered her no alternative.

{¶ 29} Dr. Barnett reported on the questionnaire that he had been treating appellant for several low back conditions including intervertebral disc degeneration in the lumbar region, midcervical disc disorder, and radiculopothy w/lower extremity symptoms. In response to the query whether he had recommended any work restrictions due to these conditions, Dr. Barnett wrote: "No, but she will know when it is time to not work anymore." (Apr. 6, 2021 Notice of Eligibility Issue at 33.) In my view, the previous accommodations made by Family Dollar for appellant's, low back condition, the absence of any further available accommodation, and Dr. Barnett's unchallenged statement in the record to the affect that appellant's low back condition would eventually force her into retirement, clearly satisfied appellant's burden of proof in this case. Though Dr. Barnett's response on the

questionnaire regarding the date appellant would be unable to work was indefinite, it was the only medical evidence submitted to the hearing officer. Family Dollar did not present any medical evidence to rebut Dr. Barnett's answers to the questionnaire.

{¶ 30} While appellant admitted she asserted additional reasons for her decision to leave her position, the evidence presented at the hearing establishes that her worsening low back condition and the absence of a reasonable accommodation was the primary reason she resigned. Appellant did not rely on her dissatisfaction with the rewards program or her fiancé's failing health concerns when she requested fewer hours. Indeed, appellant's testimony shows that her four-hour shift at Family Dollar did not preclude her from providing the type of care required by her fiancé.[1]

{¶ 31} Family Dollar next contends that the circumstances surrounding her resignation on July 31, 2020, and her subsequent failure to complete the two-week notice period support a finding that she did not act reasonably when she resigned. The evidence does not support such a finding.

{¶ 32} Appellant provided the following testimony at the hearing:

> It was not my intention to leave my employment with Family Dollar before the two-week notice. However, I was overwrought that day emotionally and I felt * * * I would say something I shouldn't have and I just was not feeling very good that day. I had a headache. I was nauseated. And I did mention that to Bart how, I was feeling * * *. It was not my intention not to come back. But I did leave that day and I think that, that did end up being the last day I worked at Family Dollar.

(Tr. at 161.)

{¶ 33} Appellant's testimony that she left work on August 6, 2020 due to illness is unchallenged, and Tallman admitted that appellant informed him she would not be returning to work to complete the two-week notice period "due to COVID concerns." (Tr. at 170.) Accordingly, to the extent that appellant was expected to work for another week under such circumstances, the evidence shows that appellant did not behave unreasonably in failing to return to work after August 6, 2020.

---

[1]Appellant testified that her responsibilities included taking her fiancé's temperature each morning, making sure he was taking his medication, and providing nutrition via feeding tube.

{¶ 34} Based on the foregoing, I would find that appellant satisfied her burden of proving she did not create the situation that led to her resignation, her employer had prior notice of the situation that led to her resignation, there was no realistic accommodation available, and she was unable, due to illness and/or COVID concerns, to work through the two-week notice period. The only medical evidence in the record permits the conclusion that appellant's low back conditions would eventually cause her stop working. Thus, the only reasonable conclusion to be drawn from the evidence in the record is that appellant had just cause for resigning her position and that the commission's finding to the contrary was against the manifest weight of the evidence. Accordingly, I would hold that the trial court erred when it affirmed the commission's decision to disallow appellant's application for unemployment benefits based on a finding of no just cause.

{¶ 35} Respectfully, I would sustain appellant's assignment of error and reverse the judgment of the Franklin County Court of Common Pleas. I would remand to the court of common pleas to issue an order requiring the commission to grant appellant's application for unemployment benefits.

_____